IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 18-cv-1682-WJM-KMT

CLINT COREY,

     Plaintiff,

v.

PROFESSIONAL RODEO COWBOY ASSOCIATION, INC.,

     Defendant.

---

## ORDER GRANTING IN PART PLAINTIFF'S MOTION TO VACATE OR MODIFY JUDGMENT

---

This matter is before the Court on Plaintiff Clint Corey's Motion to Vacate or Modify Judgment ("Motion"), which seeks to vacate the final judgment entered by the Court on February 7, 2020 (ECF No. 105), enter an order enforcing the terms of a purported settlement agreement reached by the parties prior to the Court's entry of judgment, and compel the parties to file a mutual dismissal of all claims. (ECF No. 107.)

On October 29, 2020, the Court denied the Motion—to the extent it sought a modification of the final judgment pursuant to Defendant Professional Rodeo Cowboy Association's (the "PRCA") Federal Rule of Civil Procedure 68 offer of judgment—because Mr. Corey's purported acceptance of the offer of judgment was inconsistent with the terms of the PRCA's offer. (ECF No. 138 at 3–6.) The Court reserved ruling on the Motion to the extent it sought to vacate the Court's February 7, 2020 Order granting summary judgment in favor of the PRCA and entry of final

judgment, as well as enforce the putative settlement agreement between the parties, pending an evidentiary hearing.  (*Id.* at 8.)  Thereafter, the Court held an evidentiary hearing on November 23, 2020.  (ECF No. 154.)

For the reasons set forth below, the Court grants the Motion in part.

## I.  FACTUAL FINDINGS

Based on the parties' filings and the documentary and testimonial evidence received at the evidentiary hearing, the Court makes the following findings of fact for purposes of resolving Mr. Corey's Motion.[1]

This case arises out of the PRCA's alleged termination of Mr. Corey's employment in violation of Title VII of the Civil Rights Act of 1964 and Colorado law. Mr. Corey filed his complaint on July 3, 2018 (ECF No. 1) and an amended complaint on February 25, 2019 (ECF No. 33).  After the close of discovery, the PRCA filed a motion for summary judgment (ECF No. 45).

Between February 6 and 7, 2020, while the motion for summary judgment remained outstanding, Peter Friesen, counsel for Mr. Corey, and Steven Perfrement, counsel for the PRCA, engaged in numerous settlement discussions.  (ECF No. 107-1 at 1 ¶ 3.)

On February 6, 2020, the PRCA submitted an offer of judgment pursuant to Federal Rule of Civil Procedure 68 to enter judgment in the amount of $365,000.  (ECF No. 107-2 at 2.)

The next morning, Mr. Perfrement informed Mr. Friesen that the offer of

---

[1]  All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

judgment was not the PRCA's final offer and that the PRCA had room to continue negotiating.  (Evidentiary Hearing Transcript ("Tr.") at 74.)[2]

On the morning of February 7, 2020, Mr. Friesen and Mr. Perfrement continued to engage in settlement discussions.  Before lunch, the parties reached agreement as to a monetary settlement amount that would be acceptable to both parties.  (Tr. 20, 70–71.)  Thereafter, they agreed that their settlement agreement would contain a confidentiality agreement, a non-disparagement clause, an agreement that Mr. Corey would not re-apply for PRCA employment or judging positions, a liquidated damages provision by which Mr. Corey would pay $5,000 per breach of the settlement agreement, and mutual releases.  (Tr. 21–22, 71–73.)

Mr. Friesen and Mr. Perfrement did not explicitly discuss whether Mr. Corey's wife, Beverly Corey, or friend, Jeffrey Reeves, would be bound by the settlement's non-disparagement term and releases.[3]  (Tr. 41–42, 73, 152, 155–56.)  Nor did they discuss the notion that they would not have a full binding settlement agreement until they had an executed written document.  (Tr. 29.)

Mr. Friesen testified that he then asked Mr. Perfrement whether he could think of anything else, and Mr. Perfrement indicated that he could not think of anything.[4]  (Tr.

---

[2]  Neither party has ordered the transcript of the November 23, 2020 evidentiary hearing.  Accordingly, the Court will cite the rough version of the transcript.  Pagination may differ from a final version of the transcript, to the extent it is prepared.

[3]  The parties' recollections differ about whether Mr. Friesen identified Beverly Corey in a hypothetical question about whether a Facebook posting would constitute a single violation of the non-disparagement provision.  (*Compare* Tr. 23, 41 *with* Tr. 74–75.)

[4]  Mr. Perfrement testified that he asked Mr. Friesen "whether we have addressed all material terms and he said yes, I think so.  And I said, I think so too.  Something to that effect." (Tr. 76.)

25.)  According to Mr. Friesen, there was "[n]o question in [his] mind" that the parties had entered into a binding settlement agreement at that point.  (Tr. 28–29.)

Thereafter, the parties discussed that they would need to file a notice of settlement so that the Court would vacate the deadline for a number of pretrial deliverables due that day.  (Tr. 25–27, 76–77.)  Mr. Perfrement indicated that his firm would prepare the notice.  (Tr. 27, 76.)

Jennifer Pearce, a paralegal at Mr. Perfrement's firm, prepared a draft notice of settlement (the "Notice of Settlement") by copying and pasting the language included in the Court's practice standards regarding notices of settlement.  (Tr. 78, 121.)  At 1:32 p.m., Ms. Pearce e-mailed Mr. Friesen the Notice of Settlement and said, "[Mr. Perfrement] asked that I forward the attached to you for review."  (ECF No. 107-3 at 1.)  The Notice of Settlement states:

> 1.   A settlement has been reached between the Plaintiff and Defendant;
>
> 2.   A meeting of the minds has been reached as to all material terms of the settlement;
>
> 3.   The settlement will finally and fully resolve all of the claims in this action.

(ECF No. 107-3 at 2.)  At 1:36 p.m., Mr. Friesen e-mailed Ms. Pearce, stating, "You can esign my name to this.  Thanks."  (ECF No. 107-4 at 1.)  After receiving Mr. Friesen's email, Ms. Pearce emailed Mr. Perfrement stating, "Let me know when you want me to file."[5]  (Exhibit D at 1.)[6]

---

[5] Mr. Perfrement testified that he did not plan to file the Notice of Settlement until he had agreement from his clients on the language of the settlement agreement.  (Tr. 78, 101.)  For this reason, Mr. Perfrement testified that his firm was also simultaneously preparing a motion

Thereafter, Mr. Perfrement's associate, Zachary Fitzgerald, began drafting a written settlement agreement to memorialize the parties' agreement. (Exhibit E; Tr. 77.) Mr. Perfrement made changes to the draft settlement agreement, which he sent back to Mr. Fitzgerald at 2:23 p.m. (Exhibit F; Tr. 84.) Specifically, Mr. Perfrement amended the language of the releases in the draft settlement agreement to delete the phrase "family members" from the definitions of the "PRCA Released Parties" and "PRCA Releasors." (*Compare* Exhibit E *with* Exhibit F.) However, he did not delete the reference to "family members" from the definition of "Corey Releasors" and "Corey Released Parties." (*Id.*) Neither draft version of the settlement agreement referenced Beverly Corey or Mr. Reeves by name. (*Id.*)

At 2:29 p.m., the Court entered the Order granting the PRCA's motion for summary judgment. (ECF No. 104.) At 3:02 p.m., the Clerk entered a final judgment in favor of the PRCA. (ECF No. 105.)

At approximately 4:20 p.m., Mr. Friesen called Mr. Perfrement and left a message. (Tr. 31, 91.) Mr. Perfrement did not return his call.[7] (Tr. 32.)

The next morning, at 7:59 a.m. on Saturday, February 8, 2020, Mr. Friesen sent the following e-mail to Mr. Perfrement:

---

for an extension. (Tr. 78.)

[6] Citations to "Exhibit ___" refer to documents that were introduced as exhibits during the November 23, 2020 evidentiary hearing but have not been filed on the docket.

[7] Mr. Perfrement testified that before he was ready to speak with Mr. Friesen, he needed to: (1) do legal research to determine whether the parties had a binding settlement agreement, and (2) seek direction from the PRCA. (Tr. 92, 117.) He also attempted to determine whether the Court signed the summary judgment order prior to his final communication with Mr. Friesen. (Tr. 95.)

> Steve, just making sure you saw my confirmation of the settlement.  My clients are interested in moving forward without delay.  Can I tell them when to expect the release?  Thanks, Peter

(ECF No. 107-7 at 1.)  Mr. Perfrement did not respond.  (Tr. 32, 138.)

On February 12, 2020, a paralegal at Mr. Friesen's firm e-mailed the firm's W-9 to Mr. Perfrement: "Please have check payable to Levin Sitcoff PC Trust Account in Trust for Clint Corey."  (ECF No. 107-8 at 1.)  Mr. Perfrement did not respond.  (Tr. 33–34, 139.)

The following day, Mr. Friesen called Mr. Perfrement again.  (Tr. 34.)  That afternoon, Mr. Fitzgerald sent the following e-mail to Mr. Friesen: "Hi Peter, the parties did not enter into a binding settlement agreement.  Steve will be available tomorrow to discuss."  (ECF No. 107-9 at 1.)

Mr. Friesen spoke with Mr. Perfrement on February 14, 2020 for the first time since the Court issued its order on summary judgment.  (Tr. 35.)  Mr. Friesen asked Mr. Perfrement whether he had a problem with any of the terms of the settlement agreement.[8]  (Tr. 35.)  According to Mr. Friesen, Mr. Perfrement replied, "no, no, we're good about that."  (Tr. 35.)  However, Mr. Perfrement informed Mr. Friesen that the PRCA believed that there was a mutual mistake of fact because the parties did not know how the Court planned to rule on summary judgment at the time the parties reached their settlement agreement.  (Tr. 35, 94, 141.)  The parties also discussed

---

[8] Mr. Perfrement disputes this point. (Tr. 141.)  Mr. Perfrement testified that they discussed whether they were going to have a disagreement about any of the facts, to which Mr. Perfrement stated that although they do not disagree about what happened, they may disagree about what it means.  (Tr. 93, 141.)

whether: (1) the Court had jurisdiction in light of the final judgment; and (2) the effect of the outstanding Rule 68 offer.  (Tr. 36–37, 141–42.)  During their conversation, Mr. Friesen asked Mr. Perfrement for legal authority supporting the PRCA's position. (Tr. 36.)

Mr. Perfrement did not indicate during that conversation that he believed that the parties had not entered a settlement agreement because there were material terms that still needed to be negotiated.  (Tr. 38, 97, 144.)  Mr. Friesen first learned that the PRCA was disputing that they had negotiated all material terms of the settlement when he read the PRCA's response to the Motion.  (Tr. 40, 144–46.)

On February 19, 2020, Mr. Perfrement e-mailed Mr. Friesen authority regarding "(i) mutual mistake of fact, and (ii) the ability to accept an offer of judgment after summary judgment has been granted and a final judgment has already been entered." (Exhibit 10 at 1.)

## II.  ANALYSIS

### A.    Effect of a Valid And Enforceable Settlement on an Action

A determination about whether relief is warranted under Federal Rule of Procedure 60(b) depends on whether a valid settlement agreement existed at the time the Court entered judgment.[9]  *See Sheng v. Starkey Labs. Inc.*, 117 F.3d 1081, 1083–84 (8th Cir. 1997).

When litigants enter into a valid and enforceable settlement agreement, even

---

[9]  As explained in the October 29, 2020 Order, the Court will treat the Motion as brought under Federal Rule of Civil Procedure 60(b) because: (1) it seeks vacatur or modification of the final judgment in this case, and (2) the Motion was brought over ten days following the entry of judgment.  (ECF No. 138 at 3.)

one that contains executory terms, there is no longer a live case or controversy, and the underlying dispute is moot. *See Tosco Corp. v. Hodel*, 804 F.2d 590, 591–92 (10th Cir. 1986). Mootness is an issue of subject matter jurisdiction. If a case is moot, a court lacks authority to make a ruling on the merits. *Id.* at 591; *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109–10, 1128 (10th Cir. 2010). A judgment is void if, among other reasons, the Court lacked subject matter jurisdiction at the time the judgment was entered. *See V.T.A., Inc. v. Airco, Inc.*, 597 F.2d 220, 224 (10th Cir. 1979).

Accordingly, if the parties had entered a valid settlement agreement at or prior to the time the Court entered final judgment, that judgment is void, and the Court has no choice but to vacate the final judgment and the Court's corresponding order on the PRCA's motion for summary judgment. *See Serta Simmons Bedding, LLC v. Casper Sleep, Inc.*, 950 F.3d 849, 853–54 (Fed. Cir. 2020).

**B.    Whether the Parties had Entered into a Valid Settlement Agreement**

1.    Formation and Construction of Settlement Agreements

"Issues involving the formation and construction of a purported settlement agreement are resolved by applying state contract law." *Shoels v. Klebold*, 375 F.3d 1054, 1060 (10th Cir. 2004) (quoting *United States v. McCall*, 235 F.3d 1211, 1215 (10th Cir. 2000)).

Under Colorado law, "[a] writing is not necessary to create a binding settlement agreement." *DiFrancesco v. Particle Interconnect Corp.*, 39 P.3d 1243, 1248 (Colo. App. 2001). A verbal agreement is not rendered invalid by the fact that the parties had contemplated preparing a written agreement or agreed "to stay proceedings rather than

8

immediately dismiss them." *Id.* Parties must agree on all essential terms to create a valid settlement agreement. *Fed. Lumber Co. v. Wheeler*, 643 P.2d 31, 36 (Colo. 1981) (en banc); *see also H.W. Houston Constr. Co. v. Dist. Court of the Tenth Judicial Dist.*, 632 P.2d 563, 565 (Colo. 1981) (en banc) ("In order for a settlement to be binding and enforceable, there must be a 'meeting of the minds' as to the terms and conditions of the compromise and settlement."). An agreement cannot be enforced unless the terms are sufficiently definite to allow a court to determine whether the parties have complied with them. *Stice v. Peterson*, 355 P.2d 948, 952 (Colo. 1960). While parties may definitely agree on some issues, the absence of agreement on other material issues prevents the formation of a binding contract. *DiFrancesco*, 39 P.3d at 1248 (citations omitted).

Like any contract, the existence of a settlement agreement "is generally a question of fact." *Id.* at 1247. A court may summarily enforce a settlement agreement if it is undisputed that a settlement exists. *Id.* "The terms of the settlement agreement must be clear, unambiguous, and capable of enforcement." *City & Cnty. of Denver v. Adolph Coors Co.*, 813 F. Supp. 1476, 1479 (D. Colo. 1993); *H.W. Houston Constr. Co.*, 632 P.2d at 565 ("[I]t must appear that further negotiations are not required to work out important and essential terms."); *I.M.A., Inc. v. Rocky Mountain Airways, Inc.*, 713 P.2d 882, 888 (Colo. 1986) (en banc) (recognizing that evidence of the parties' conduct, oral statements and writings, and other evidence illuminating the circumstances surrounding the making of an agreement are admissible to clarify the intent and purpose of the parties).

2.    <u>Analysis</u>

In determining whether the parties had reached a meeting of the minds as to all material terms of the settlement agreement, the Court will consider the parties' testimony regarding their settlement discussions, draft notice of settlement, draft written settlement agreement, post-judgment conduct, and the potential materiality of the remaining terms to be negotiated.

i.    *The Parties' Settlement Discussions*

The parties agree that at around 1:00 p.m. on Friday, February 7, 2020, they reached a general settlement agreement that included the following terms: (1) the payment of a specified sum by the PRCA to Mr. Corey; (2) a confidentiality agreement; (3) a non-disparagement clause; (4) an agreement that Mr. Corey would not re-apply for PRCA employment or judging positions; (5) a liquidated damages provision by which Mr. Corey would pay $5,000 per breach; and (6) mutual releases.  After discussing these terms, the parties discussed whether they had addressed all material terms of their settlement.  According to Mr. Friesen, he and Mr. Perfrement

> consciously broached the subject of whether we had, in fact, reached agreement as to all material terms.  We were doing so because of our common understanding that we would have to advise the Court immediately that we had a settlement.  My exact words were, "I can't think of anything else we need to discuss, can you?"  His response was "I can't think of anything."  As to every term we discussed, PRCA's counsel advised that he had discussed it with his client and had received their approval.

(ECF No. 123-1 at 1–2 at ¶ 3.)  Mr. Perfrement likewise stated the following in his declaration:

> At the conclusion of our discussion, I asked [Mr.] Friesen

10

> whether we had addressed all material terms of an
> agreement.  He replied along the lines of "I think so."  (I do
> not recall his exact words).  I responded similarly, "yeah, I
> think so too".  (I do not recall my exact words.)

(ECF No. 117-1 at 2 ¶ 6.)

Nonetheless, Mr. Perfrement contends that although they *addressed* all material

terms, they had not *reached an agreement on the scope* of every term.  (Tr. 106–08,

137–38.)  Specifically, he argues that they had yet to reach an agreement about

whether Beverly Corey or Mr. Reeves were included in the non-disparagement

provisions and releases.  (ECF No. 117-1 at 3 ¶ 8.)  The Court disagrees.

Despite PRCA's current protestations that they had yet to clarify the scope of

certain settlement terms, there is no contemporaneous evidence that Mr. Perfrement

believed—or conveyed to Mr. Friesen—that they had yet to discuss material aspects of

these terms.  Mr. Friesen testified that, during their discussions on February 7,

Mr. Perfrement did not raise the prospect that these terms may need to include

nonparties Beverly Corey or Mr. Reeves.[10]  Mr. Perfrement's declaration confirms this

fact.  (ECF No. 117-1 at 4 ¶ 8.)

In fact, Mr. Perfrement's declaration directly contradicts his argument that he

considered Beverly Corey and Mr. Reeves's inclusion in the settlement agreement to be

material *at the time* he and Mr. Friesen reached an agreement.  He admits that "[a]s we

began drafting a settlement agreement, the importance of these issues became

apparent."  (*Id.*)  In other words, Mr. Perfrement *later* determined that the PRCA

---

[10]  The Court notes that it found Mr. Friesen to be a very credible witness based on his demeanor, the content of his answers, and his willingness to admit the limitations of his memory.

should include Beverly Corey and Mr. Reeves in their settlement agreement.  That Mr.

Perfrement later wanted to *add* terms to the contract does not change the fact that the

parties had reached agreement as to all material terms of the contract at around 1:00

p.m. on February 7.  *See Royal v. Colo. State Personnel Bd.*, 690 P.2d 253, 255 (Colo.

App. 1984) ("later dissatisfaction with the terms of a stipulated compromise agreement

is not sufficient grounds to set it aside").

     ii.  *The Draft Notice of Settlement*

    That the parties had reached a meeting of the minds as to all material terms of

the settlement is supported by the Notice of Settlement that Ms. Pearce drafted and

sent to Mr. Friesen.  The Notice of Settlement provides:

    1.  A settlement has been reached between the Plaintiff
      and Defendant;

    2.  A meeting of the minds has been reached as to all
      material terms of the settlement;

    3.  The settlement will finally and fully resolve all of the
      claims in this action.

(ECF No. 107-3 at 2.)  Ms. Pearce forwarded the Notice of Settlement to Mr. Friesen for

his review.  (ECF No. 107-3 at 1.)  In response, Mr. Friesen responded, "You can esign

my name to this.  Thanks."  (ECF No. 107-4 at 1.)

    Mr. Perfrement now suggests that filing the Notice of Settlement was just one

option to obtain relief from the trial-related deadline for deliverables due that day.  (Tr.

77–78.)  Accordingly, he contends that he asked Ms. Pearce to send the Notice of

Settlement to Mr. Friesen for his review but that Mr. Perfrement did not intend to file it

because the parties had not yet agreed upon language for the settlement agreement.

(Tr. 78.)

The Court is not persuaded.  Neither Mr. Perfrement's nor Ms. Pearce's written communications indicate that Mr. Perfrement was not planning to file the Notice of Settlement with the Court until the parties had agreed upon language in a written settlement agreement. (Tr. 163–64.)  To the contrary, Mr. Friesen's response giving Ms. Pearce permission to "esign his name" strongly suggests that he believed that the Notice of Settlement would be *filed with the Court* later that day without further action on his part, and not that it was now ripe to be the subject of further consideration or negotiation.  (ECF No. 107-4.)

During the evidentiary hearing, Mr. Perfrement and Ms. Pearce also attempted to minimize the importance of the Notice of Settlement's statement that the parties had reached a meeting of the minds by saying that Ms. Pearce merely copied-and-pasted the language from the Court's revised practice standard for stipulated notice of settlements.  (Tr. 78, 121; WJM Revised Practice Standard IV.C.2.)  According to Mr. Perfrement, the Notice's language "didn't mean anything."  (Tr. 102.)

However, there is no contemporaneous evidence that suggesting that Mr. Perfrement did not believe—notwithstanding the language of the Notice—that the parties had a meeting of the minds as to all material terms of the settlement at the time that Ms. Pearce e-mailed the Notice to Mr. Friesen.  To the extent the PRCA did not intend to be bound by the plain and ordinary language of the Notice of Settlement, it could have specified as much.  The PRCA did not do so.

iii.    *The Draft Written Settlement Agreement*

Before the Court issued its summary judgment order at 2:29 p.m. on February 7,

13

2020, the PRCA's counsel had already begun drafting a settlement agreement that would memorialize the parties' agreement.  The Court will therefore look to that draft settlement as an additional piece of evidence as to whether PRCA's counsel considered nonparties Beverly Corey and Mr. Reeves to be material components of any settlement on February 7.

During the evidentiary hearing, Mr. Perfrement testified that when he was reviewing the draft settlement agreement that his associate had put together, he considered taking out a reference to family members—specifically with respect to Beverly Corey—from the releases.  (Tr. 88.)

However, this consideration is not reflected Mr. Perfrement's changes to the draft agreement as of 2:23 p.m. on February 7—just 6 minutes before the Court issued its order on summary judgment.  In this draft, Mr. Perfrement amended the language of the releases to remove the reference to family members from the PRCA Released Parties. After all, the PRCA, as a corporate entity, can have no family members.  However, Mr. Perfrement made *no changes* to PRCA's release of "Corey and his successors and assigns, heirs, *family members*," etc.[11]  (Ex. F at § 3(b) (emphasis added).)  Nor did he add language stating that either Beverly Corey or Mr. Reeves would be subject to the non-disparagement provision or parties to the agreement.  (Exhibit F.)

Accordingly, the PRCA's draft settlement agreement does not support its

---

[11]  During cross-examination, Mr. Perfrement testified that he did not intentionally leave in references to "family members" with respect to the PRCA's release of Mr. Corey.  (Tr. 158.) He also testified that he "hadn't gotten" to these changes yet and changes to the non-disparagement provision, despite the fact that he had made other changes throughout the document and had emailed the document back to Mr. Fitzgerald.  (Tr. 158, 160; Exhibit F.)  The Court finds this response to be not credible.

contention that terms binding Beverly Corey and Mr. Reeves were material aspects of

the parties' settlement agreement.

### iv.    *The Parties' Post-Judgment Conduct*

The PRCA's counsel's post-judgment conduct supports Mr. Corey's position that

they had reached agreement as to all material settlement terms prior to the Court's

issuance of the summary judgment order and final judgment.

- •    Shortly after the Court's order and final judgment was filed, Mr. Friesen called Mr. Perfrement by telephone.  (ECF No. 107-1 at 4 ¶ 14.)  That call went unanswered.  (Tr. 32.)

- •    At 7:59 a.m. the next morning, Mr. Friesen emailed Mr. Perfrement again, writing, "Steve, just making sure you saw my confirmation of the settlement.  My clients are interested in moving forward without delay. Can I tell them when to expect the release?"  (ECF No. 107-7 at 1.)  This email went unanswered.  (Tr. 32, 138.)

- •    Four days later, a paralegal at Mr. Friesen's firm sent the firm's W-9 to the PRCA's counsel to facilitate payment of the settlement.  (ECF No. 107-8 at 1.)  The PRCA's counsel did not respond that day.  (Tr. 33–34, 139.)

- •    The next day, Mr. Friesen again called Mr. Perfrement.  (Tr. 34.)  Only then, 6 days after the Court's order, another attorney at Mr. Perfrement's firm emailed Mr. Friesen to inform him that "The parties did not enter into a binding settlement agreement."  (ECF No. 107-9 at 1.)

The Court finds that this intentional and prolonged period of non-responsiveness

by the PRCA's counsel is inconsistent with the actions of a party who truly believed it

had not entered into a binding and enforceable settlement agreement.

Moreover, when Mr. Perfrement and Mr. Friesen finally spoke, Mr. Perfrement

did not inform Mr. Friesen that their settlement agreement was not binding because

they had yet to agree on all material terms.  (Tr. 38, 97, 144.)  Instead, Mr. Perfrement

contended that they could not have entered into a binding settlement agreement

because there was a mutual mistake of fact about whether the Court had decided the motion for summary judgment.[12]  (ECF No. 107-1 at 5 ¶ 18.)

These facts additionally suggest that the parties had entered into a binding settlement agreement.

> v.    *The Potential Materiality of the Remaining Terms*

In assessing the materiality of any settlement terms relating to Mr. Reeves and/or Beverly Corey, the Court considers the extent to which Mr. Reeves and Beverly Corey were central to the litigation.  To be sure, Mr. Corey's complaint recognizes statements made by Beverly Corey and Mr. Reeves were related to the events underlying this lawsuit.  (*See* ECF No. 33 ¶¶ 9–14.)  However, the question is not whether Beverly Corey and Mr. Reeves were somewhat or somehow related to the underlying lawsuit, but whether the PRCA viewed Mr. Reeves and Beverly Corey as *central* to the lawsuit.

The case record does not support the notion that the PRCA viewed Mr. Reeves and Beverly Corey as central to the lawsuit and any settlement before the Court entered the summary judgment order and the final judgment.  The PRCA did not, for example, file counterclaims against Beverly Reeves or Mr. Corey or file a separate lawsuit to stop their actions.  Nor did these individuals come up in any way–material or otherwise–during the parties' prior mediation.  (Tr. 42–43.)

Moreover, the Court finds that the PRCA's offer of judgment greatly undermines

---

[12]  Mr. Perfrement also testified that his firm had tried to determine when the Court signed the summary judgment order.  (Tr. 95.)  This inquiry is irrelevant if, as the PRCA contends, the parties had never entered into a settlement agreement in the first place.

its current contention that non-disparagement and confidential terms for Mr. Reeves

and Beverly Corey were material aspects of any settlement agreement.  On February 6,

2020, the PRCA's counsel sent Mr. Corey's counsel an offer of judgment in which the

PRCA offered Mr. Corey

> to take judgment against PRCA for the total amount of
> $365,000.00, as full and final satisfaction of all federal and
> state claims asserted by Corey in this case, including
> prejudgment interest and all claims for costs and attorneys'
> fees, and provided that Corey's total recovery shall not
> exceed $365,000.00.  This offer is made for the purposes
> specified in Rule 68 and is not to be construed as an
> admission of any liability by PRCA, nor is it an admission
> that Corey has suffered any damages.

(ECF No. 107-2 at 2.)  In other words, the PRCA was willing to settle this action for a

significant sum of money *without requiring Mr. Corey, Beverly Corey, or Mr. Reeves to

agree to any non-disparagement or release terms.*  (Tr. 161–62.)  This fact significantly

undercuts the PRCA's current protestations regarding the materiality of any non-

disparagement and release terms for Beverly Corey and/or Mr. Reeves.

Accordingly, for the reasons set forth above, the Court finds that the parties had

reached a meeting of the mind as to all material settlement terms.

vi.   *Whether the Parties Agreed to be Bound Before Execution of a
      Written Instrument*

Now that the Court has determined that the parties had reached a meeting of the

mind as to all material terms of their settlement agreement, it must determine whether

the parties intended to be bound before the parties had executed a written instrument.

A party is not bound by an oral agreement if it does not intend to be bound until a

formal document is executed; however, the party arguing that the parties intended not

17

to be bound until the execution of a formal writing has the burden of proving either that both parties understood they were not to be bound until the executed contract was delivered, or that the other party should have known that the disclaiming party did not intend to be bound before the contract was signed.  *Adolph Coors Co.*, 813 F. Supp. at 1481; *I.M.A., Inc.*, 713 P.2d 882 at 888 ("[T]he mere intention to reduce an oral or informal agreement to writing, or to a more formal writing, is not of itself sufficient to show that the parties intended that until such formal writing was executed the parol or informal contract should be without binding force."); *Griego v. Kokkeler*, 543 P.2d 729, 730 (Colo. App. 1975) (holding that "where there is a complete agreement, the fact that certain formalities remain to be performed, such as the execution of written releases, does not reduce such agreement to the status of mere negotiations").

In determining whether the enforcing party should have known the other party did not intend to be bound, courts consider: (1) whether the parties have stated an intention not to be bound absent an executed writing, (2) whether one party has performed partially and the other party has accepted such performance, (3) whether there are no issues left to be negotiated such that the signing of the contract is merely ministerial, and (4) whether the agreement concerns complex business matters such that a written agreement would be the norm, not the exception.  *Adolph Coors Co.*, 813 F. Supp. at 1481.

Here, the PRCA has failed to establish that both parties understood they were not to be bound until the executed contract was delivered, or that Mr. Corey should have known that the PRCA did not intend to be bound before the contract was signed.

18

Although the parties contemplated that they would ultimately memorialize their agreement in a written document, they did not discuss that their agreement would not be effective unless and until they signed a written agreement. (*See, e.g.*, Tr. 110, 165; ECF No. 107-1 at 2 ¶ 8 ("There was no agreement that the settlement would not be binding until a written agreement was completed and executed.").) To the contrary, the PRCA's counsel drafted—and Mr. Corey's counsel approved—the Notice of Settlement, which states that "[a] settlement has been reached between the Plaintiff and Defendant" and does not state that there are any preconditions to the settlement. (ECF No. 107-3 at 2.)

Accordingly, the Court finds that, prior to the time it entered its summary judgment order and final judgment, the parties had entered into a valid and enforceable settlement agreement, despite their intention to reduce their oral agreement to writing. Further, the Court concludes, as a matter of law, that because the parties' settlement agreement moots the action, it has no alternative but to vacate the final judgment and the Court's corresponding order on the PRCA's motion for summary judgment. *See Serta Simmons Bedding, LLC*, 950 F.3d at 853.

**D.      The Court's Jurisdiction to Enforce the Parties' Settlement Agreement**

In addition to seeking a determination that the parties had entered into a valid and enforceable settlement agreement, Mr. Corey also asks the Court to enter an order enforcing the terms of a purported settlement agreement reached by the parties prior to the Court's entry of judgment and compelling the parties to file a mutual dismissal of all claims. The Court cannot grant this request.

19

Once the parties reached a meeting of the minds regarding a settlement agreement, the underlying dispute became moot, and the Court lost subject matter jurisdiction over the action.  *See Tosco Corp.*, 804 F.2d at 591–92.  The parties did not agree that the Court would retain jurisdiction over the settlement contract, and the Court will not exercise its discretion do so.  *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994).

The Court sincerely hopes that, having found that the parties had entered into a valid and enforceable settlement agreement, the parties will comply with the terms of their settlement.  To the extent, however, that a future alleged breach of the settlement agreement were to arise, the settlement agreement may only be enforced in a court with proper jurisdiction over the breach of contract dispute.

### III.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.    Mr. Corey's Motion to Vacate or Modify Judgment (ECF No. 107) is GRANTED IN PART as follows:

   a.    The Motion is GRANTED to the extent it seeks a determination that the parties had entered into a valid and enforceable settlement agreement prior to the time the Court had entered its Order Granting Summary Judgment and Final Judgment;

   b.    The Court's Order Granting Summary Judgment (ECF No. 104) is VACATED;

   c.    The Final Judgment (ECF No. 105) is VACATED;

      d.     This action is DISMISSED WITHOUT PREJUDICE for lack of subject

          matter jurisdiction;

2.     The parties shall bear their own attorneys' fees and costs; and

3.     The Clerk shall TERMINATE this case.

     Dated this 11th day of December, 2020.

                            BY THE COURT:

                            William J. Martínez
                            United States District Judge